UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION

**Case Number: 22-20276-CIV-MARTINEZ**

NEW YORK PACKAGING II LLC
d/b/a REDIBAGUSA,

      Plaintiff,

v.

PRIVATE D CAPITAL GROUP
CORPORATION, *et al.*,

      Defendants.

_____/

## ORDER

**THIS CAUSE** came before this Court on Defendants Private D Capital Group Corporation, David Rozinov, Jose Bazbaz, and SBR Quality Products's Motion to Dismiss (the "Motion"), (ECF No. 23).   This Court reviewed the Motion, pertinent portions of the record, and applicable law and is otherwise fully advised in the premises.   Accordingly, after careful consideration, the Motion is **GRANTED IN PART** and **DENIED IN PART** and the Complaint is **DISMISSED** for the reasons set forth herein.

## I.   BRIEF FACTUAL BACKGROUND

By this action, Plaintiff New York Packaging II LLC d/b/a RedibagUSA ("RediBag") seeks to recover damages caused by Defendants' alleged misconduct related to their sale of allegedly defective hand sanitizer to RediBag, a supplier of commercial goods.   (*See generally* Compl., ECF No. 1.)

RediBag supplies wholesalers and retailers with paper, plastic, and other consumer goods. (*Id.* ¶¶ 26–27.)   In March 2020, RediBag began discussions with Defendants David Rozinov and

Jose Bazbaz so that it could begin selling hand sanitizer to its wholesale and retail customers at the onset of the COVID-19 pandemic.  (*Id.* ¶ 46.)

In April 2020, Mr. Rozinov and Mr. Bazbaz [1] introduced RediBag to Defendants Solucionés Cosméticas, SA de CV; Manuel Martinez; Santiago Martinez; and David Ali (collectively, the "Soluciones Defendants").  (*Id.* ¶ 47.)   RediBag and the Soluciones Defendants agreed that the Soluciones Defendants would manufacture hand sanitizer in Mexico and import it into the United States to fill purchase orders RediBag would submit to Defendant Private D Capital Group Corporation ("Private D").[2]  (*Id.* ¶¶ 50, 52.)   RediBag, the Soluciones Defendants, Mr. Rozinov, and Mr. Bazbaz "coordinated regarding label design, product specifications, and shipping."  (*Id.* ¶ 49.)   During this period, Defendants repeatedly stated that its hand sanitizer would be manufactured using American-made, Food and Drug Administration-approved alcohol that was nearly 100% pure.  (*Id.* ¶¶ 58–73.)   Defendants provided RediBag with "a technical sheet and safety data sheet" for the sanitizer product, Bersih.  (*Id.* ¶ 60.)   RediBag alleges that "[t]he technical sheet stated that the ingredients in Bersih hand sanitizer, a '[h]omogeneous translucent gel of light color, without aroma,' were '[e]thyl alcohol, deionized water, propylene glycol, carbomer, [and] sodium hydroxide.'"  (*Id.*)   The Soluciones Defendants also provided RediBag with a specifications sheet that stated that Bersih had one active ingredient: 70% ethanol. (*Id.* ¶ 61.)   RediBag alleges that Mr. Bazbaz sent RediBag an email with "alcohol diligence documents" he received from Mr. Saba.  (*Id.* ¶ 66.)   One of the "alcohol diligence documents" was a U.S. Customs Certificate of Origin from April 22, 2022, which stated that approximately 80,000 barrels of "undenatured ethanol derived from corn" was exported by Freepoint

---

[1]   Mr. Bazbaz is Defendant SBR Quality Products's President, (Compl. ¶ 35), and Mr. Rozinov is SBR Quality Products's CEO, (*id.* ¶ 31).

[2]   Mr. Rozinov is Private D's President.  (*Id.* ¶ 34.)

Commodities L.L.C., not Defendants.  (*Id.* ¶ 67.)  RediBag alleges that, at the time, it did not notice that discrepancy.  (*Id.*)  The ethanol in the Freepoint Commodities shipment originated in the United States and was over 99% ethanol and less than 0.01% methanol.  (*Id.* ¶¶ 67–68.)

RediBag would ultimately submit seventy-five purchase orders to Private D for approximately 200,000 cases of hand sanitizer.  (*Id.* ¶ 51.)  Private D issued seventy-five invoices, one for each purchase order, between April 17, 2020, and June 29, 2020, and RediBag paid the invoices by wire.  (*Id.* ¶ 55.)  The invoices totaled $9,113,851.36.  (*Id.* ¶ 56.)  On or about April 13, 2020, the Soluciones Defendants imported hand sanitizer from its Mexico City factory to Defendant Euro Cosmetics[3] in Laredo, Texas.  (*Id.* ¶ 53.)  Private D was identified as the consignee for the sanitizer shipment.  (*Id.* ¶ 52.)  RediBag coordinated with the Soluciones Defendants, Mr. Rozinov, and Mr. Bazbaz to deliver the hand sanitizer to RediBag's customers across the United States.  (*Id.* ¶ 54.)  RediBag alleges that "[m]any of the RediBag customers that purchased hand sanitizer sell product in New York and Florida, among other states."  (*Id.*)

RediBag alleges that it ultimately discovered that Defendants' Bersih hand sanitizer was not made entirely with ethanol sourced from the United States.  (*Id.* ¶ 74–98.)  Before the discovery, RediBag asked Defendants if they had changed alcohol suppliers in May 2020 because its customers began complaining that "the hand sanitizer smelled like a 'tequila factory.'"  (*Id.* ¶ 82.)  Mr. Bazbaz informed RediBag that a change had been made in response to a new FDA policy announced on April 27, 2020.  (*Id.* ¶ 83.)  Mr. Bazbaz allegedly reassured RediBag that "[a]ll ingredients are the same as the ones we initially sent."  (*Id.* ¶ 85.)

On June 19, 2020, the FDA issued an alert in which it warned consumers about the dangers

---

[3]     Mr. Ali is the President and sole director of Euro Cosmetics, (*id.* ¶ 44), and he was the President of Soluciones Cosméticas, (*id.* ¶ 223).

of using hand sanitizer containing methanol.   (*Id.* ¶ 97.)   While Defendants' Bersih products were not included in the hand sanitizers covered in the alert, the FDA eventually recommended a recall of Bersih products on July 1, 2020.   (*Id.* ¶ 103.)   On July 2, 2020, the FDA added Bersih products to the FDA's list of hand sanitizers that consumers should not use, and RediBag and Private D were identified in the list of distributors for Bersih.   (*Id.* ¶ 105.)

RediBag alleges that Defendants denied that their hand sanitizer was contaminated after the FDA issued its warning.   (*Id.* ¶ 107.)   Defendants, acting through Mr. Bazbaz, represented to RediBag that Bersih was methanol-free.   (*Id.* ¶ 109.)   Based on that representation, RediBag notified its customers that Bersih hand sanitizer was not contaminated.   (*Id.* ¶¶ 114–121.)   In reality, RediBag alleges, it learned that "thousands of bottles of Bersih hand sanitizer were made with Mexican alcohol and were dangerously contaminated with methanol."   (*Id.* ¶ 122.)

On July 14, 2020, the Soluciones Defendants recalled Bersih products.   (*Id.* ¶ 128.)   Some of RediBag's customers were willing to accept replacement products, but others demanded refunds or returns for credit.   (*Id.* ¶¶ 136–139.)   RediBag demanded that Defendants replace all recalled products, (*id.* ¶ 130), and Defendants agreed to refund or replace all tainted hand sanitizer, (*id.* ¶¶ 140–158).   RediBag alleges that Defendant breached that agreement.   (*Id.* ¶¶ 155–197.)   As a result, RediBag alleges, many of its customers have taken the position that RediBag lost its right to cure, (*id.* ¶ 198), with one of RediBag's customers filing suit against RediBag for delivering the defective hand sanitizer, (*id.* ¶¶ 202, 210).

As a result of Defendants' actions, RediBag alleges that it has suffered millions in damages. (*Id.* ¶ 206–212.)   By this action, RediBag seeks to recover those damages against all Defendants, whom RediBag alleges acted in concert to defraud RediBag and its customers by selling Mexican-made hand sanitizer in the United States.   (*See id.* ¶¶ 1–2.)

## II.   LEGAL STANDARD

Federal Rule of Civil Procedure 8 requires "a short and plain statement of the claim showing that the pleader is entitled to relief . . . ." Fed. R. Civ. P. 8(a)(2).   To survive a motion to dismiss for failure to state a claim, a complaint must contain "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face . . . .'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).   While a complaint "does not need detailed factual allegations," it must provide "more than labels and conclusions" or "a formulaic recitation of the elements of a cause of action . . . ." *Twombly*, 550 U.S. at 555.

When ruling on Rule 12(b)(6) motion, a court must "accept the factual allegations in the complaint as true, construing them in the light most favorable to the plaintiff . . . ." *Quality Auto Painting Ctr. of Roselle, Inc. v. State Farm Indem. Co.*, 917 F.3d 1249, 1260 (11th Cir. 2019) (first citing *Twombly*, 550 U.S. at 570; and then citing *Iqbal*, 556 U.S. at 678).   Courts are, nevertheless, "not bound to accept as true a legal conclusion couched as a factual allegation." *Papasan v. Allain*, 478 U.S. 265, 286 (1986) (citing *Briscoe v. LaHue*, 663 F.2d 713, 723 (7th Cir. 1981)). "Factual allegations must be enough to raise a right to relief above the speculative level on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Twombly*, 550 U.S. at 555–56 (cleaned up).

## III.   DISCUSSION

The Complaint sets forth twelve counts against all Defendants: two counts under the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. § 1962, (Counts I and II); three counts under Section 2 of the Uniform Commercial Code (the "UCC") (Counts III–V); one count of promissory estoppel (Count VI); one count for "breaches of contracts" (Count VII);

one Count under New York's Deceptive Practices Act, New York General Business Law § 349

("NYDPA"), (Count VIII); one count under Florida's Deceptive and Unfair Trade Practices Act

("FDUTPA"), section 501.201, Florida Statutes (2022), (Count IX); one count for fraudulent

inducement (Count X); one count of civil conspiracy (Count XI); and one count of piercing the

corporate veil (Count XII).  (Compl. ¶¶ 213–417.)  Now, Defendants Private D, Mr. Rozinov,

Mr. Bazbaz, and SBR Quality Products (the "Moving Defendants") move for a more definite

statement because the Complaint is an impermissible shotgun pleading and to dismiss because the

Complaint fails to state claims for relief.  (*See generally* Mot., ECF No. 23.)

### A.    *The Complaint is a Shotgun Pleading and Must Be Dismissed with Leave to Amend*

In addition to Rule 8(a)(2)'s requirement that a plaintiff provide a "short and plain

statement of the claim showing that the pleader is entitled to relief[,]" Fed. R. Civ. P. 8(a)(2), Rule

10(b) mandates that:

> [a] party must state its claims or defenses in numbered paragraphs, each limited as
> far as practicable to a single set of circumstances.  A later pleading may refer by
> number to a paragraph in an earlier pleading.   If doing so would promote clarity,
> each claim founded on a separate transaction or occurrence—and each defense
> other than a denial—must be stated in a separate count or defense.

Fed. R. Civ. P. 10(b).  A complaint is a "shotgun pleading" if it violates Rule 8(a)(2) or Rule

10(b).  *Weiland v. Palm Beach Cnty. Sherriff's Off.*, 792 F.3d 1313, 1320 (11th Cir. 2015).

The Eleventh Circuit has identified the following common types of shotgun pleadings:

> The most common type—by a long shot—is a complaint containing multiple counts
> where each count adopts the allegations of all preceding counts, causing each
> successive count to carry all that came before and the last count to be a combination
> of the entire complaint.   The next most common type . . . is a complaint that does
> not commit the mortal sin of realleging all preceding counts but is guilty of the
> venial sin of being replete with conclusory, vague, and immaterial facts not
> obviously connected to any particular cause of action.   The third type of shotgun
> pleading is one that commits the sin of not separating into a different count each
> cause of action or claim for relief.   Fourth, and finally, there is the relatively rare

> sin of asserting multiple claims against multiple defendants without specifying
> which of the defendants are responsible for which acts or omissions, or which of
> the defendants the claim is brought against.

*Id.* at 1321–23 (citations omitted).   "The unifying characteristic of all types of shotgun pleadings is that they fail to one degree or another, and in one way or another, to give the defendants adequate notice of the claims against them and the grounds upon which each claim rests."   *Id.* 1323. "Courts in the Eleventh Circuit have little tolerance for shotgun pleadings."   *Vibe Micro, Inc. v. Shabanets*, 878 F.3d 1291, 1295 (11th Cir. 2018).   The Complaint falls squarely within the first, third, and fourth categories.   *See Weiland*, 792 F.3d at 1321–23.

In the Complaint, RediBag adopts the allegations of all preceding counts that came before making the last count to be a combination of the entire complaint, a "mortal sin." (Compl. ¶¶ 213, 269, 280, 296, 308, 322, 340, 354, 365, 374, 392, 400); *see Weiland*, 792 F.3d at 1321.   This alone warrants dismissal.   *See, e.g., Paylor v. Hartford Fire Ins.*, 748 F.3d 1117, 1125–26 (11th Cir. 2014) ("The story is, by now, a familiar one: the plaintiff kicks things off with a shotgun pleading, where 'each count . . . adopts the allegations of all preceding counts.   Consequently, allegations of fact that may be material to a determination of count one, but not count four, are nonetheless made a part of count four . . . . [I]t is virtually impossible to know which allegations of fact are intended to support which claim(s) for relief.'" (quoting *Anderson v. Dist. Bd. of Trs. Of Cent. Fla. Cmty. Coll.*, 77 F.3d 364, 366 (11th Cir. 1996))); *Ryder Truck Rental, Inc. v. Logistics Res. Sols., Inc.*, No. 21-21573-CIV, 2021 WL 9037642, at *2 (S.D. Fla. July 28, 2021) (dismissing complaint because nearly every count incorporates all preceding allegations).

RediBag also asserts multiple causes of action within the same count in Counts VII, X, and XI.   Counts VII and X respectively attempt to state multiple breach of contract and fraudulent inducement claims founded upon two separate factual predicates, and Count XI alleges three

different civil conspiracy claims that are necessarily connected to three separate counts: Counts VIII, IX, and X.   *See Frometa v. Petsmart LLC*, No. 21-cv-22564, 2021 WL 4819587, at *2 (S.D. Fla. Oct. 15, 2021) ("Combining multiple claims under one count makes it difficult for [the d]efendant to answer and prepare for discovery. . . . Each legal theory is a separate cause of action and should be raised independently with sufficient factual allegations.").   As to Counts VII and X, RediBag alleges that *all* Defendants breached or fraudulently induced RediBag into entering multiple contracts, but there are at least two categories of contracts at issue in Counts VII and X: the seventy-five purchase orders and the contract to replace the defective hand sanitizer between RediBag and Defendants following the initial breaches.   (*See, e.g.*, Compl. ¶¶ 341, 346, 376, 385.) As to Count XI, RediBag attempts to group three different conspiracies into a single count: (1) conspiracy to violate New York General Business Law § 349 as to Count VIII; (2) conspiracy to fraudulently induce RediBag to contract with Defendants, as alleged in Count X; and (3) conspiracy to violate FDUTPA as to Count XI.   (*Id.* ¶ 392–99.)   Therefore, Counts VII, X, and XI are dismissed as shotgun claims.

The Complaint also falls into the fourth category because RediBag did not differentiate between the actions of each Defendant in any count.   *See Weiland*, 792 F.3d at 1323.   For instance, Count VII alleges multiple breach of contract claims against all defendants without specifying which Defendants are responsible for specific acts or omissions.   This is further compounded by RediBag's failure to attach any of the contracts it alleges Defendants breached to the Complaint.   Nowhere in Count VII is it alleged that Euro Cosmetics or Mr. Saba were involved in the alleged "breaches of contracts," and yet, RediBag asserts the count against them along with the remaining Defendants.   It is, therefore, impossible for the Moving Defendants—or any Defendant for that matter—to decipher to which "Defendants" Count VII pertains.   Similarly,

many allegations in Count X assert that all Defendants acted or made omissions without identifying what Defendants took the actions or made the omissions.  (*E.g.*, Compl. ¶¶ 279–80.) Counts I, II, VI, VIII, and IX suffer from the same infirmity.  And Counts III, IV, V,[4] and VII each include a paragraph that asserts an allegation against Private D, (*id.* ¶¶ 283, 297, 309, 341), and then an alternative allegation against Solucionés Cosméticas, (*id.* ¶¶ 284, 298, 310, 342). While pleading in the alternative is permissible under the Rules, Fed. R. Civ. P. 8(d)(2), such a pleading practice causes confusion as it makes it difficult for Defendants to answer and prepare for discovery, *see Frometa*, 2021 WL 4819587, at *2.

Accordingly, the Motion, is **GRANTED** in this respect, and the Complaint is **DISMISSED WITHOUT PREJUDICE** as an impermissible shotgun pleading.  RediBag will be given leave to amend the Complaint to address the deficiencies outlined herein.  *See Magluta v. Samples*, 256 F.3d 1282, 1284–85 (11th Cir. 2001) (holding that a court should generally allow plaintiffs to replead their shotgun complaint).  This Court will nevertheless address the merits of the Parties' arguments to guide the parties' preparation of prospective pleadings.  *See Jovine v. Abbott Laboratories, Inc.*, 795 F. Supp. 2d 1331, 1337 (S.D. Fla. 2011).

---

[4]   With regard to Counts III, IV, and V, the Complaint also fails "to give the defendants adequate notice of the . . . grounds upon which each claim rests" because RediBag failed to identify under which state's codification of the UCC RediBag intends to travel.  *See Weiland*, 792 F.3d at 1323.   As discussed herein, *infra* Part III.C., RediBag will be granted leave to amend those counts, but it is reminded that it must separate each claim for relief under different causes of action, *see Weiland*, 792 F.3d at 1322–23 ("The third type of shotgun pleading is one that commits the sin of not separating into a different count each cause of action or claim for relief.").

**B.**     ***Counts I and II: RICO and RICO Conspiracy***[5]

The Moving Defendants argue that Counts I and II should be dismissed because RediBag did not sufficiently plead the "enterprise" or "continuity" elements of a civil RICO claim.   (Mot. 8–13.)   This Court disagrees.

It is a violation of RICO "for any person employed by or associated with any enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity . . . ."   § 1962(c).   To sustain a civil RICO claim at this stage, RediBag must sufficiently plead the following four elements: "(1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity."   *See Lehman v. Lucom*, 727 F.3d 1326, 1330 (11th Cir. 2013).

### 1.     <u>RediBag Sufficiently Pleaded that Defendants Acted As an "Enterprise" Under RICO</u>

Regarding the first and second elements, RediBag "must establish 'conduct of an enterprise' and that the enterprise had a common goal."   *See Williams v. Mohawk Indus., Inc.*, 465 F.3d 1277, 1283–84 (11th Cir. 2006).   "A RICO enterprise exists 'where a group of persons associates, formally or informally, with the purpose of conducting illegal activity.'"   *Jackson v. BellSouth Telecomms.*, 372 F.3d 1250, 1264 (11th Cir. 2004) (quoting *United States v. Hewes*, 729 F.2d 1302, 1311 (11th Cir. 1984)).   "In the simple case, an enterprise is an 'individual, partnership, corporation, association, or other legal entity."   *Almanza v. United Airlines, Inc.*, 851 F.3d 1060, 1067 (11th Cir. 2017) (quoting 18 U.S.C. § 1961(4)).   "The more challenging case

---

[5]     RediBag and the Moving Defendants agree Count I and II should rise or fall together.   (*See* Mot. 13; Resp. 15–16, ECF No. 29.)   This is so because RediBag did not include any allegations in Count II that were not already in Count I.   *See Viridis Corp. v. TCA Global Credit Master Fund, LP*, 155 F. Supp. 3d 1344, 1365 (S.D. Fla. 2015) ("If there are no new allegations, then because a plaintiff failed to state a RICO claim, the conspiracy claim must necessarily fail." (citing *Rogers v. Nacchio*, 241 F. App'x 602, 609 (11th Cir. 2007))).

occurs when the enterprise is alleged to be a 'union or group of individuals associated in fact although not a legal entity.'" *Id.* (quoting § 1961(4)). Here, RediBag alleges that Defendants were an associated-in-fact enterprise, (Compl. ¶ 215)—that the Moving Defendants and Soluciones Defendants were "a group of persons associated together for a common purpose of engaging in a course of conduct[,]" *see id.* (quoting *United States v. Turkette*, 452 U.S. 576, 583 (1981)).

The concept of an association-in-fact enterprise is "expansive." *Boyle v. United States*, 556 U.S. 938, 944 (2009) ("[T]he very concept of an association in fact is expansive. In addition, the RICO statute provides that its terms are to be 'liberally construed to effectuate its remedial purposes.'"). A plaintiff must nevertheless plead that an association-in-fact enterprise has "(1) a 'purpose,' (2) 'relationships among those associated with the enterprise,' and (3) 'longevity sufficient to permit these associates to pursue the enterprise's purpose.'" *Almanza*, 851 F.3d at 1067 (quoting *Boyle*, 556 U.S at 944). The association-in-fact enterprise may be formal or informal "as long as the enterprise's 'various associates function as a continuing unit.'" *Id.* (quoting *Turkette*, 452 U.S. at 583).

Here, accepting the well-pleaded facts in the Complaint as true and making all reasonable inferences in RediBag's favor, RediBag sufficiently pleaded that Defendants were engaged in an association-in-fact enterprise. *See Wolff v. Leadenhall Bank & Tr.* No. 03-22778-CIV, 2005 WL 8165194, at *5–6 (S.D. Fla. Apr. 1, 2005). For instance, RediBag alleges that each of the individual Defendants (Mr. Rozinov, Mr. Bazbaz, Mr. Saba, Mr. Ali, Mr. M. Martinez, and Mr. S. Martinez) "have close personal and business relationships stretching back many years" and that Mr. Rozinov, Mr. Bazbaz, and Mr. Saba are all principals of SBR Quality Products, the company RediBag alleges Defendants used alongside Private D to facilitate the alleged fraudulent scheme

against RediBag in the United States.   (Compl. ¶ 218.)   RediBag alleges that the Moving Defendants, acting through Mr. Bazbaz, introduced RediBag to their associates, the Soluciones Defendants in April 2020.   (*Id.* ¶ 47.)   The Soluciones Defendants are alleged to have knowingly manufactured defective hand sanitizer using contaminated Mexican alcohol rather than U.S.-sourced, FDA-approved alcohol as promised to RediBag.   (*Id.* ¶¶ 122–24.)   And, as RediBag alleges, all Defendants communicated with RediBag regarding the quality of the Bersih hand sanitizer RediBag was ultimately provided.   (*Id.* ¶ 226.)   RediBag also alleges that Defendants used RediBag to "avoid the consequences of misrepresenting the source and quality of the products and violating U.S. laws governing such products . . . ."   (*Id.* ¶ 221.)   Reading the Complaint as a whole, RediBag sufficiently alleged that the Moving Defendants, along with the other Defendants, were "a group of persons who were associated for the common purpose of" passing off methanol-contaminated, Mexican-made hand sanitizer in the United States through RediBag.   *See Wolff*, 2005 WL 8165194, at *6.

## 2.   RediBag Sufficiently Pleaded Closed-Ended Continuity

To sufficiently plead a "pattern of racketeering activity" under the third and fourth elements of a civil RICO claim, a plaintiff "must charge that: (1) the defendants committed two or more predicate acts within a ten-year time span; (2) the predicate acts were related to one another; and (3) the predicate acts demonstrated criminal conduct of a *continuing* nature."   *Jackson*, 372 F.3d at 1264.   "'Continuity' is both a closed- and open-ended concept, referring to either a closed period of repeated conduct, or to past conduct that by its nature projects into the future with a threat of repetition."   *H.J. Inc. v. Nw. Bell Tel. Co.*, 492 U.S. 229, 241 (1989) (citing *Barticheck v. Fidelity Union Bank/First Nat'l State*, 832 F.2d 36, 39 (3d Cir. 1987)).

Here, RediBag argues that it had sufficiently pleaded both a closed- and open-ended

concept in the Complaint.  (Resp. 8–13.)  "A party alleging a RICO violation may demonstrate continuity over a closed period by proving a series of related predicates extending over a substantial period of time."  *Am. Dental Ass'n v. Cigna Corp.*, 605 F.3d 1283, 1291 (11th Cir. 2010) (quoting *H.J. Inc.*, 492 U.S. at 242).  Preliminarily, the Moving Defendants do not challenge that RediBag sufficiently pleaded at least two predicate acts (as alleged, repeated instances of wire fraud).  (*See* Mot. 8–13.)  Therefore, this Court looks to whether Defendants committed the alleged predicate acts in a "series" and "over a substantial period of time."  *See Jackson*, 372 F.3d at 1265.

"The Eleventh Circuit has rejected allegations of closed-ended continuity when the supposed pattern of racketeering activity lasted less than nine months, and other circuits impose even stricter requirements."  *Trump v. Clinton*, No. 22-CV-14102, 2022 WL 4119433, at *19 (S.D. Fla. Sept. 8, 2022) (collecting cases) (finding that plaintiff failed to sufficiently plead continuity element of civil RICO claim because alleged pattern of racketeering activity lasted approximately six months).  As the *Jackson* court explained, in this Circuit, "closed-ended continuity cannot be met with allegations of schemes lasting less than a year."  *Jackson*, 372 F.3d at 1266.  The period pertinent to the closed-ended continuity inquiry is that within which the predicate acts were committed, not the period underpinning the entire scheme.  *See Birmingham v. Doe*, 21-CV-23472, 2022 WL 18134962, at *21 (S.D. Fla. Dec. 6, 2022), *report and recommendation adopted sub nom. Birmingham v. ROFX.net*, 2023 WL 112308 (S.D. Fla. Jan. 34, 2023) (collecting cases).  When determining "whether the predicates extended over a 'substantial period of time,' [courts] may also consider the 'number of victims, number of racketeering acts, variety of racketeering acts, whether the injuries were distinct, complexity and size of the scheme, and nature or character of the enterprise or unlawful activity.'"  *Magnifico v.*

*Villanueva*, 783 F. Supp. 2d 1217, 1229 (S.D. Fla. Apr. 27, 2011) (quoting *Ward v. Nierlich*, 617 F. Supp. 2d 1226, 1238 (S.D. Fla. 2008)).   In any event, "where the RICO allegations concern only a single scheme with a discrete goal, . . . courts have refused to find a closed-ended pattern of racketeering even when the scheme took place over longer periods of time.   *Jackson*, 372 F.3d at 1267.

At the outset of this analysis, this Court rejects the Moving Defendants' argument that the alleged scheme was "only a single scheme with a discrete goal" because RediBag alleges that there were at least two separate schemes: One scheme concerned misrepresentations concerning the safety and country of origin of the Bersih hand sanitizer, (*e.g.*, *id.* ¶ 236), and the second scheme concerned Defendants' misrepresentations concerning its capacity to produce and ship replacement hand sanitizer after RediBag discovered the initial scheme, (*e.g.*, *id.* ¶ 251). Therefore, this Court turns to determine how long the alleged pattern of racketeering activity lasted.

Although RediBag alleges that the predicate acts Defendants committed in furtherance of the alleged scheme took place over the course of twenty-two months, (*id.* ¶ 318), the Moving Defendants correctly highlight that the Complaint only pleads that the predicate acts were, at most, committed within a seventeen-month period, ending in July 2021, (Mot. 9.)   RediBag alleges that the scheme began "no later than March 2020[,]" (Compl. ¶ 257), and the Complaint alleges that the last instance of wire fraud occurred on July 9, 2021, when Mr. Bazbaz wrote to RediBag the following: "We've payed [sic] for freight in the past and will Continue [sic] to do so as per our agreement."   (*See id.* ¶ 195.)   To be sure, July 9, 2021, is the most recent date identified in the Complaint.   (*See generally id.*)   So, as pleaded, the Complaint details an alleged pattern of racketeering activity that spanned seventeen months: March 2020 to July 2021.   Given that the

alleged pattern of racketeering activity lasted seventeen months; included "hundreds" of predicate acts of wire fraud; resulted in approximately $10 million in alleged damages; spanned at least three states (Texas, New York, and Florida) and two countries (the United States and Mexico); involved a large number of victims (RediBag's customers and consumers); and concerned fraudulent misrepresentations made during the procurement and production of personal protective equipment during the COVID-19 pandemic, this Court finds that the related predicate acts extended over a period "substantial enough to meet the closed-ended continuity requirement, despite lasting less than two years." *See Magnifico*, 783 F. Supp. at 1229 (finding that plaintiffs' RICO claims were sufficiently pleaded where alleged scheme spanned eighteen months, involved at least eighteen distinct victims, and was founded on numerous predicate acts); *cf. Aim Recycling of Fla., LLC v. Metals USA, Inc.*, No. 18-cv-60292, 2020 WL 209860, at *23 (S.D. Fla. Jan. 13, 2020) (denying defendants' motion for summary judgment on plaintiffs' RICO claim because, in part, plaintiffs showed a genuine dispute of material fact whether their customers were victims of defendants' alleged racketeering activities).

Like the *Magnifico* court, this Court "recognizes that this is a close question and one on which reasonable jurists might disagree[,]" but this case is also in its infancy. *Magnifico*, 783 F. Supp. at 1229. Of course, discovery may reveal that the scheme lasted fewer than seventeen months or affected fewer victims, "which would likely require summary judgment in favor of [D]efendants on the RICO claims." *See id.* But discovery may just as likely reveal that the alleged scheme lasted longer than seventeen months and touched more victims than RediBag identified, so accepting the veracity of the allegations in the Complaint as pleaded and drawing all inferences in RediBag's favor, this Court finds that the Complaint sufficiently pleaded closed-ended continuity. *See id.*

The Complaint does not, however, sufficiently plead an open-ended continuity RICO claim. *See Jackson*, 372 F.3d at 1267–68. To state an open-ended continuity claim, a plaintiff must "allege either that the alleged acts were part of the defendants' 'regular way of doing business,' or that the illegal acts threatened repetition in the future." *Id.* at 1267 (quoting *H.J. Inc.*, 492 U.S. at 242–43). Here, the Complaint is devoid of any indication that the alleged scheme was the Moving Defendants'—and, indeed, all Defendants'—"regular way of doing business." (*See generally* Compl.) And, while RediBag alleges that "there is a substantial threat that Defendants will continue to commit predicate acts and that their racketeering activity will recur in the future[,]" RediBag offers no support for that general and wholly conclusory allegation. (Compl. ¶ 261.)

### 3. *RediBag Sufficiently Pleaded A RICO Conspiracy Claim*

The Moving Defendants also argue that the Complaint fails to sufficiently plead a civil RICO conspiracy claim in Count II. (Mot. 13.) In so arguing, the Moving Defendants rely exclusively on their arguments against RediBag's RICO claim in Count I: if Count I fails, so too does Count II. (*Id.* (citing *Viridis Corp.*, 155 F. Supp. 3d at 1365)); *see Viridis Corp.*, 155 F. Supp. 3d at 1365 ("If there are no new allegations, then because a plaintiff failed to state a RICO claim, the conspiracy claim must necessarily fail." (citing *Rogers*, 241 F. App'x at 609)). But this Court found that RediBag sufficiently pleads a RICO claim in Count I, so the Motion is **DENIED** in that regard as the remainder of Count II remains unchallenged. This Court nevertheless briefly addresses the merits of Count II.

To be sure, to state a claim for civil RICO conspiracy, RediBag must have alleged "an illegal agreement to violate a substantive provision of the RICO statute. *See Viridis Corp.*, 155 F. Supp. 3d at 1365 (quoting *Super Vision Int'l, Inc. v. Mega Int'l Comm. Bank Co.*, 534 F. Supp.

2d 1326, 1342 (S.D. Fla. 2008)).   "A civil RICO conspiracy claim requires a showing of the existence of a conspiracy, and the commission of an overt act in furtherance of the conspiracy that causes injury to the plaintiff."   *Beck v. Prupis*, 162 F.3d 1090, 1098 (11th Cir. 1998).   "A plaintiff can establish a RICO conspiracy claim in one of two ways: (1) by showing that the defendant agreed to the overall objective of the conspiracy; or (2) by showing that the defendant agreed to commit two predicate acts."   *Republic of Panama v. BCCI Holdings (Luxembourg) S.A.*, 119 F.3d 935, 950 (11th Cir. 1997).   The existence of the conspiracy may be inferred from "the conduct of the alleged participants or from circumstantial evidence of the scheme."   *United States v. LeQuire*, 943 F.2d 1554, 1562 (11th Cir. 1991) (quoting *United States v. Ard*, 731 F.2d 718, 724 (11th Cir. 1984)).

Here, this Court finds that the allegations in the Complaint provide inferences from "the conduct of the alleged participant or from circumstantial evidence of a scheme" sufficient to show the Moving Defendants'—and all Defendants'—agreement to the overall objective of the conspiracy.   *See LeQuire*, 943 F.2d at 1562.   Accordingly, the Motion is **GRANTED** insofar as Counts I and II are impermissible shotgun claims, and the Motion is **DENIED** as to Counts I and II in all other respects.   Therefore, Counts I and II are **DISMISSED WITHOUT PREJUDICE**.

### C.    *Counts III–V: Violations of the UCC*

The Moving Defendants next move to dismiss Counts III, IV, and V because RediBag failed to plead its UCC claims under a state's codification of the UCC.   (Mot. 13–14.)   This Court agrees.

RediBag asserts claims under sections 2-314, 2-313, 2-608 of the UCC in Counts III, IV, and V, respectively.   (Compl. ¶¶ 280–321.)   But "the UCC is not a law . . . ."   *Big Veranda Knolls GA LLC v. Akins*, No. 20-cv-00201, 2020 WL 9594391, at *2 (S.D. Fla. Jan. 23, 2020).

True, "[m]ost states have . . . adopted the exact same provisions of the UCC within their own statutory codes," *Exim Brickell, LLC v. Bariven, S.A.*, No. 09-cv-20915, 2011 WL 13131263, at *18 (S.D. Fla. Aug. 16, 2011), but RediBag "must rely on a state's codification of the UCC" to sufficiently plead Counts III, IV, and V, *see Gilbert v. Monaco Coach Corp.*, 352 F. Supp. 2d 1323, 1329 (N.D. Ga. Mar. 9, 2004) (dismissing plaintiff's UCC counts for failure to rely on a state's codification of the UCC).

Accordingly, the Motion is **GRANTED** in that regard, and Counts III, IV, and V are **DISMISSED WITHOUT PREJUDICE**.

> **D.**  *Count VI: Promissory Estoppel*

The Moving Defendants next move to dismiss Count VI because RediBag (1) failed to indicate that Count VI was pleaded in the alternative to Count VII and (2) did not plead that the contracts referred to in Count VII were invalid.  (Mot. 18–19.)  In response, RediBag admits that it failed to allege that the contracts at issue are potentially invalid.  (Resp. 22 ("At a minimum, RediBag should be permitted to amend its Complaint to label the promissory estoppel and breach of contract claim as being in the alternative and add an allegation that the contracts at issue are potentially invalid.").  There is no doubt that RediBag may plead a promissory estoppel claim in the alternative to its breach of contract claims, but it must also allege in the alternative that the subject contracts were invalid.  *See, e.g., Just Play, LLC v. FitzMark, Inc.*, No. 20-80663-CIV, 2021 WL 4973588, at *2 (S.D. Fla. Sept. 23, 2021).  Here, true to RediBag's admission in the Response to the Motion, the Complaint contains no allegation pleaded in the alternative that the allegedly breached contracts were invalid.  (*See* Compl. ¶¶ 322–39.)

Accordingly, the Motion is **GRANTED** in that regard, and Count VI is **DISMISSED WITHOUT PREJUDICE**.

### E.    Count VII: "Breaches of Contracts"

As explained herein, Count VII is dismissed as a shotgun claim.  *See supra* Part III.A. Accordingly, the Motion is **GRANTED** in that regard, and Count VII is **DISMISSED WITHOUT PREJUDICE**.

### F.    Count VIII: NYDPA

The Moving Defendants next move to dismiss Count VIII because RediBag's NYDPA claim does not contain sufficient allegations concerning causation.  (Mot. 16–17.)  RediBag argues that it need not meet Rule 9(b)'s heightened pleading standard to assert a claim under NYDPA, so it adequately pleaded a NYDPA claim under Rule 8.  (Resp. 24–25.)  This Court agrees with RediBag.

To state a claim under NYDPA, "a plaintiff must allege '(1) acts or practices that are "consumer-oriented"; (2) that such acts or practices are deceptive or misleading in a material way; and (3) that plaintiff has been injured by reason of those acts.'"  *Lava Trading Inc. v. Hartford Fire Ins.*, 326 F. Supp. 2d 434, 438 (S.D.N.Y. 2004) (quoting *DePasquale v. Allstate Ins.*, 179 F. Supp. 2d 51, 58 (E.D.N.Y. 2002)).  NYDPA does not require plaintiffs to allege fraud, so Rule 9(b) does not require plaintiffs to plead a NYDPA claim with particularity.  *Elder v. Reliance Worldwide Corp.*, 563 F. Supp. 3d 1221, 1250 (N.D. Ga. 2021) (addressing NYDPA claim); *Lava Trading*, 326 F. Supp. 2d at 438 ("[NYDPA] does not require plaintiff[s] to allege fraud, and therefore the particularity requirements of Rule 9(b) . . . are not triggered . . . .").  Plaintiffs must, however, "allege with some specificity the allegedly deceptive acts or practices that form the basis for the claim."  *Lava Trading*, 326 F. Supp. 2d at 438.  "[A] claim for deceptive business practices under [NYDPA] . . . requires [facts illustrating] a causal connection between some injury to plaintiffs and some misrepresentation made by defendants . . . ."  *Small v. Lorillard Tobacco*

*Co.*, 679 N.Y.S.2d 593, 604 (N.Y. App. Div. 1998).   And a NYDPA claim does not require proof of reliance.   *In re Scotts EZ Seed Litig.*, 304 F.R.D. 397, 409 (S.D.N.Y. 2015) (citing *Koch v. Acker, Merrall & Condit Co.*, 967 N.E.2d 675, 675 (N.Y. 2012)).   A plaintiff need only allege that a defendant's material deception caused them to suffer a specific loss—"[n]othing more is required."   *See Stutman v. Chem. Bank*, 731 N.E.2d 608, 613 (N.Y. 2000).

Here, this Court finds that RediBag sufficiently pleads a NYDPA claim in Count VIII. RediBag pleaded that (1) Defendants' allegedly deceptive acts were consumer-oriented, (Compl. ¶ 355–57, 360); (2) the allegedly deceptive acts were "material," (*id.* ¶ 369), and RediBag "suffered damages" of approximately $10 million, (*id* ¶ 363), "by reason of those acts."   *See Lava Trading*, 326 F. Supp. 2d at 438.   At the pleading stage, "[n]othing more is required."   *See Stutman*, 731 N.E.2d at 613.

Accordingly, the Motion is **GRANTED** insofar as Count VIII is an impermissible shotgun claim, and the Motion is **DENIED** as to Count VIII in all other respects.   Therefore, Count VIII is **DISMISSED WITHOUT PREJUDICE**.

### G.      *Count IX: FDUTPA*

The Moving Defendants next move to dismiss Count IX because RediBag's FDUTPA claim does not meet Rule 9(b)'s heightened pleading standard.   (Mot. 17–18.)   RediBag argues that it need only satisfy Rule 8's pleading standard.   (Resp. 23–24.)

Rule 9(b) states as follows: "In alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake."   Fed. R. Civ. P. 9(b).   In other words, Rule 9(b) requires that a plaintiff satisfy a heightened pleading standard than Rule 8 when the complaint contains allegations of fraud or mistake.   *See Bluegreen Vacations Unlimited, Inc. v. Timeshare Laws. P.A.*, No. 20-24681-Civ, 2021 WL 3552175, at *6 (S.D. Fla. Aug. 11, 2021).

Therefore, under Rule 9(b), a plaintiff must allege "(1) the precise statements, documents, or misrepresentations made; (2) the time, place, and person responsible for the statement; (3) the content and manner in which these statements misled the Plaintiffs; and (4) what the defendants gained by the alleged fraud." *Brooks v. Blue Cross & Blue Shield of Fla., Inc.*, 116 F.3d 1364, 1380–81 (11th Cir. 1997) (citing *Fitch v. Randor Indus., Ltd.*, No. 90-2084, 1990 WL 150110, at *2 (E.D. Penn. Sept. 27, 1990)).

Courts in this District disagree whether Rule 9(b)'s pleading standard applies to claims under FDUTPA when those claims sound in fraud. *Compare State Farm Mut. Auto. Ins. v. Performance Orthopedics & Neurosurgery, LLC*, 278 F. Supp. 3d 1307, 1328 (S.D. Fla. 2017) ("Federal district courts have split as to whether FDUTPA claims are subject to Rule 9(b). . . . However, where the gravamen of the claim sounds in fraud, as here, the heightened pleading standard of Rule 9(b) applies." (citations omitted)), *Sanchez v. Team Health, LLC*, No. 18-21174-CIV, 2021 WL 4990803, at *10 (S.D. Fla. Mar. 31, 2021) (finding that FDUTPA claim sounding in fraud must meet Rule 9(b)'s heightened pleading standard), *and Llado-Carreno v. Guidant Corp.*, 09-cv-20971, 2011 WL 705403, at *5 (S.D. Fla. Feb. 22, 2011) (same), *with Bluegreen Vacations*, 2021 WL 3552175, at *7 (finding that a FDUTPA claim need not meet Rule 9(b)'s pleading requirement), *and Costa v. Kerzner Int'l Resorts, Inc.*, No. 11-60663-CV, 2011 WL 2519244, at *2 (S.D. Fla. June 23, 2011) (same). But this Court has already held that Rule 9(b) applies to a FDUTPA claim sounding in fraud, and this Court is not persuaded that it should reconsider its position. *Sanchez*, 2021 WL 4990803, at *10.

In response to the Motion, RediBag tacitly admits that the Complaint fails to satisfy Rule 9(b)'s pleading standard by only arguing that the Complaint need only satisfy the pleading requirements set forth in Rule 8. (Resp. 26–27.) To be sure, Count IX is insufficient under Rule

9(b) as it includes only general assertions that "Defendants' acts and practices were deceptive in a material way." (Compl. ¶ 369.) Therefore, this Court finds that RediBag failed to plead its fraud-based FDUTPA claim with sufficient particularity. *See Sanchez*, 2021 WL 4990803, at \*10 (finding a plaintiff's complaint insufficient to allege a fraud-based FDUTPA claim). Accordingly, the Motion is **GRANTED** in that regard, and Count IX is **DISMISSED WITHOUT PREJUDICE**.

### H.     *Count X: Fraudulent Inducement*

Next, the Moving Defendants argue that Count X should be dismissed because it is barred by the independent tort doctrine and otherwise fails to meet Rule 9(b)'s heightened pleading standard. (Mot. 18–20.) Although the independent tort doctrine does not bar Count X, RediBag failed to sufficiently plead fraudulent inducement with sufficient particularity to survive dismissal, and in any event, this Court finds that Count X must be dismissed as a shotgun claim, as set forth herein. *See supra* Part.III.A.

"Where a contract exists, a tort action will lie for either intentional or negligent acts considered to be independent from the acts that breached the contract." *HTP, Ltd. v. Lineas Aereas Costaricenses, S.A.*, 685 So. 2d 1238, 1239 (Fla. 1996) (citing *Ferguson Transp., Inc. v. N. Am. Van Lines, Inc.*, 687 So. 2d 821 (Fla. 1996). "Fraudulent inducement is an independent tort in that it requires proof of facts separate and distinct from the breach of contract." *Id.* "It normally 'occurs prior to the contract and the standard of truthful representation placed upon the defendant is not derived from the contract,' . . . i.e., 'whether the defendant was truthful during the formation of the contract is unrelated to the events giving rise to the breach of contract.'" *Id.* (citations omitted) (first citing *Woodson v. Martin*, 663 So. 2d 1327, 1331 (Fla. 2d DCA 1995) (Altenbernd, J., dissenting); and then citing *Williams v. Peak Resorts Int'l, Inc.*, 676 So. 2d 513,

517 (Fla. 5th DCA 1996)).   As the Florida Supreme Court has expressly held, "an action on a contract induced by fraud is not inconsistent with an action for damages for the deceit . . . ."   *Id.* (quoting *Bankers Tr. Co. v. Pac. Emps. Ins.*, 282 F.2d 106, 110 (9th Cir. 1960)).   A fraudulent inducement claim requires a plaintiff to allege facts different than those required to sufficiently plead a breach of contract.   *HTP*, 685 So. 2d at 1239.   That is because a fraudulent inducement claim "attends conduct prior to striking the express or implied contract and alleges that one party tricked the other into contracting."   *Leisure Founders, Inc. v. CUC Int'l, Inc.*, 833 F. Supp. 1562, 1572 (S.D. Fla. 1993).

The crux of the Moving Defendants' argument is that Count X is merely a disguised fraud in the performance claim, which they argue is barred under the economic loss doctrine.   (Mot. 18–19.)   "Courts draw a distinction between claims for fraud in the performance of a contract, which are barred by the economic loss rule, and claims for fraudulent inducement."   *Hobirn, Inc. v. Aerotek, Inc.*, 787 F. Supp. 2d 1298, 1306 (S.D. Fla. Mar. 31, 2011).   "If fraud is perpetrated which *induces* someone to enter into a contract, there is a cause of action for fraud and the remedies attendant to that particular tort are available."   *La Pesca Grande Charters, Inc. v. Moran*, 704 So. 2d 710, 712 (Fla. 5th DCA 1998) (emphasis added).   "If there is no fraud inducing someone to enter into a contract, but the contract is breached, the cause of action sounds in contract and contract remedies are available."   *Id.*   And, as the *La Pesca Grande* court continued, "The fact that the measure of damages may be the same for both causes of action does not make the fraud claim disappear."   *Id.*   The *La Pesca Grande* court included the following example in explaining its ruling, which this Court finds particularly helpful:

> Suppose someone offers to sell you a particular emerald for $5,000 and, in order to induce you to buy it, represents to you that it is "top quality" and that it has not been filled. You buy it based on the factual representation that the stone is unfilled but later you learn that it, in fact, had been filled. If the seller knew the emerald had

been filled but lied in order to trick you into agreeing to buy it, you have a cause of action for fraud with all its attendant remedies. You may also have an action for breach of contract. The fact that the same measure of damages (the difference in value between a filled emerald and an unfilled emerald) may be available under both the tort and the breach of contract does not cause the tort to disappear. Nor does the inclusion of the fraudulent representation as an express warranty in the contract preclude the tort remedy.

Suppose, on the other hand, on December 1, 1997, the same person enters into a contract with you pursuant to which, in exchange for your payment of $5,000, he will deliver to you on January 1, 1998[,] a "top quality," unfilled emerald. If, on January 1, 1998, he instead delivers an emerald that has been filled, he has only breached the contract. It is immaterial whether, when he delivered the emerald on January 1, 1998, he knew the emerald was filled. This is breach of contract pure and simple and cannot be converted into a fraud. Nor is it a fraud if the emerald is not "top quality" because such a representation concerning the quality of the product is essentially opinion, not fact, and the characteristics of the product are a matter that the parties can expect to control by contract.

*Id.* (citing *HTP*, 685 So. 2d at 1240).   The allegations in the Complaint broadly fall into the first *La Pesca Grande* scenario.   *See id.*

As discussed herein, however, Count X includes claims for relief involving two separate factual predicates.   *See supra* Part III.A.   As to the first factual predicate in Count X, RediBag fails to state a claim for fraudulent inducement.   *See Yuken Corp. v. Gedcore LLC*, 22-20661-CIV, 2022 WL 3701233, at *6 (S.D. Fla. June 21, 2022) (finding that plaintiff failed to sufficiently plead fraud in the inducement because, in part, plaintiff did not plead damages different than its breach of contract claims); *cf. May v. Nygard Holdings Ltd.*, 203 F. App'x 949, 951 (11th Cir. 2006) (finding that plaintiffs' fraudulent inducement claim survived summary judgment where it alleged that defendants' fraudulent misrepresentations convinced plaintiff's to enter into contract at issue).   In Count X, RediBag alleges that "Defendants made numerous false statements regarding present facts that induced RediBag to purchase hand sanitizer from Defendants and sell it to RediBag's customers."   (Compl. ¶ 376.)   While that allegation differs from the pertinent allegations in Count VII, which state that Defendants "materially breached the terms of [their]

24

contracts with RediBag by providing hand sanitizer that was unsafe and manufactured using methanol-laced ethanol sourced from Mexico[,]" (*id.* ¶¶ 343–44), Count X is silent as to how RediBag would have acted had it known about the alleged fraudulent misrepresentations, (*see* ¶¶ 374–391).   While it is not beyond reason to infer that RediBag would have chosen to forego contracting with Defendants had it known about the misrepresentations, Count X must be pleaded with particularity in accordance with Rule 9(b).   *See Nationwide Advantage Mortg. Co. v. Fed. Guar. Mortg. Co.*, No. 09-CIV-20372, 2010 WL 2652496, at \*5 (S.D. Fla. Feb. 26, 2010) (finding that plaintiff's fraudulent inducement claim was not barred but that plaintiff failed to plead claim with sufficient particularity under Rule 9).   Regarding the second factual predicate, however, RediBag pleaded that it would have sought replacement hand sanitizer from another manufacturer had it known that Defendants could not produce suitable replacements. (Compl. ¶¶ 385, 387.)

Ultimately, although the independent tort doctrine does not bar RediBag's fraudulent misrepresentation claims this Court concludes that Count X must be dismissed.   Accordingly, the Motion is **GRANTED** insofar as Count X is an impermissible shotgun claim and RediBag failed to sufficiently plead its claim with particularity, and the Motion is **DENIED** as to Count X in all other respects.   Therefore, Count X is **DISMISSED WITHOUT PREJUDICE.**

### I.    *Count XI: Civil Conspiracy*

As explained herein, Count XI is dismissed as a shotgun claim.   *See supra* Part III.A. Accordingly, the Motion is **GRANTED** in that regard, and Count XI is **DISMISSED WITHOUT PREJUDICE**.

### J.    *Count XII: Piercing the Corporate Veil*

Last, the Moving Defendants argue that RediBag fails to state a claim for alter ego liability. (Mot. 20–25.)   RediBag argues that it satisfied its burden at the pleading stage and that this Court

should allow its piercing the corporate veil claim to proceed to discovery.   (Resp. 28.)   This Court notes that the Parties agree that Florida law governs this Court's analysis.   (*See* Mot. 20–25; Resp. 28–30.)

As an initial matter, piercing the corporate veil is a theory of liability, not an independent cause of action.   *Peacock v. Thomas*, 516 U.S. 349, 354 (1996) ("Piercing the corporate veil is not itself an independent . . . cause of action, but rather is a means of imposing liability on an underlying cause of action."); *Turner Murphy Co. v. Specialty Constructors, Inc.*, 659 So. 2d 1242, 1245 (Fla. 1st DCA 2020) ("Piercing a corporate veil is not itself a cause of action any more than the doctrine of *respondeat superior* is.").   Therefore, this Court dismisses Count XII.   *See, e.g.*, *MerchACT, LLC v. Ronski*, No. 20-cv-82043, 2022 WL 3682207, at *6 (S.D. Fla. Jan. 13, 2022) (dismissing alter ego liability count in counterclaim because it is not an independent cause of action); *Lifecell IP Holdings, LLC v. Cosmedique, LLC*, No. 19-cv-60978, 2020 WL 9607038, at *16 (S.D. Fla. July 16, 2020) (same).   If RediBag so chooses, it is granted leave to amend the Complaint to include pertinent and *specific* allegations concerning its alleged alter ego liability theory in the body of the amended pleading and then identify, under each relevant count, which Defendant RediBag asserts is liable based on an alter ego liability theory.   *See, e.g.*, *Lan Li v. Walsh*, No. 16-81871-CIV, 2017 WL 3130388, at *9–10 (S.D. Fla. July 24, 2017) (dismissing alter ego clam with leave for plaintiff to replead allegations in body of its amended complaint); *Gumbel v. Scott*, No. 09-60480-CIV, 2010 WL 11505125, at *2 (S.D. Fla. Jan. 6, 2010) (same).

**IV.   CONCLUSION**

Accordingly, it is **ORDERED AND ADJUDGED** that:

1.      The Motion, (ECF No. 23), is **GRANTED IN PART** and **DENIED IN PART** as set forth herein.

2.      The Complaint, (ECF No. 1), is **DISMISSED** as set forth herein.

3.      RediBag is **GRANTED** leave to file an amended complaint that addresses the deficiencies in Counts I–XI discussed herein **on or before Tuesday, March 14, 2023.**

4.      **RediBag's failure to comply with this Order will result in dismissal without prejudice without further warning**.

**DONE AND ORDERED** in Chambers at Miami, Florida, this ⟨28⟩ day    of    February, 2023.

_____
JOSE E. MARTINEZ
UNITED STATES DISTRICT JUDGE

Copies provided to:
All Counsel of Record

27